# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **CLAIRE A. CHRISTIAN,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06cv00084 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand the case to the ALJ for further consideration.

## I. Background and Standard of Review

Plaintiff, Claire A. Christian, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

Case 1:06-cv-00084-PMS   Document 17   Filed 05/09/07   Page 1 of 15   Pageid#: 55

The court's review in this case is limited to determining if the factual findings reached by the Commissioner are supported by substantial evidence and were reached through application of correct legal standards. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Christian protectively filed her application for DIB on September 24, 2004, alleging disability as of June 1, 2003, based on possible multiple sclerosis, problems with her back, feet and hands and carpal tunnel syndrome.[2] (Record, ("R."), at 46, 48, 55, 62, 82.) The claim was denied initially and upon reconsideration. (R. at 18-20, 23, 25-27.) Christian then requested a hearing before an administrative law judge, ("ALJ"). (R. at 28.) The ALJ held a hearing on January 20, 2006, at which Christian was represented by counsel. (R. at 248-71.)

By decision dated April 20, 2006, the ALJ denied Christians's claim. (R. at 12-15.) The ALJ found that Christian met the disability insured status requirements of the Act for DIB purposes through June 30, 2004.[3] (R. at 15.) The ALJ found that

---

[2]Christian's DIB application is not contained in the record.

[3]Because Christian's date last insured was June 30, 2004, Christian must show that she was disabled on or prior to that date.

Christian had not performed substantial gainful activity since the alleged onset date. (R. at 15.) The ALJ also found that the medical evidence established that at no time prior to July 1, 2004, did Christian suffer from any severe impairment. (R. at 15.) Therefore, the ALJ found that Christian was not disabled, as defined in the Act, at any time through June 30, 2004, and was not entitled to benefits. (R. at 15.) *See* 20 C.F.R. § 404.1520(c) (2006).

After the ALJ issued his decision, Christian pursued her administrative appeals, (R. at 7), but the Appeals Council denied her request for review. (R. at 4-6.) Christian then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006). The case is before this court on the Commissioner's motion for summary judgment filed on December 20, 2006.[4]

## II. Facts[5]

Christian was born in 1965, (R. at 46), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c) (2006). Christian has a high school education. (R. at 60.) Her past work experience includes jobs as a food service worker, a production and assembly worker, a stocker and a day care worker. (R. at 56, 65-71.)

---

[4]Christian did not file a motion for summary judgment.

[5]Christian submitted medical records dated subsequent to June 30, 2004, her date last insured for DIB purposes. However, since those records are not relevant to determining disability on or prior to June 30, 2004, they will not be discussed in this Memorandum Opinion at any length.

Case 1:06-cv-00084-PMS   Document 17   Filed 05/09/07   Page 3 of 15   Pageid#: 57

Christian testified at her 2006 hearing that she was unable to work due to weakness and numbness in the arms and legs, dizziness, blurred vision and migraine headaches. (R. at 256-58.) Christian testified that although she took medication for her migraine headaches, she continued to have three to four each month requiring her to lie down and rest. (R. at 258-59.) Christian stated that she had lesions on her brain and was scheduled to undergo an MRI to monitor her condition. (R. at 259.) She testified that she no longer drove due to weakness and vision problems. (R. at 260.) Christian testified that her doctors thought that she might have multiple sclerosis. (R. at 261.) She further testified that she experienced back problems beginning in 2003 that might be connected with the multiple sclerosis. (R. at 261.) Christian stated that she experienced stomach problems including heartburn and nausea. (R. at 261-62.)

Christian testified that she was undergoing mental health counseling and was being treated with medication for depression. (R. at 265.) She stated that she had been in counseling since 2004 and that she saw her counselor four to six times a year.[6] (R. at 266-68.)

Jean Hambrick , a vocational expert, also testified at the hearing. (R. at 268-70.) Hambrick classified Christian's work as a stocker as light[7] and semiskilled, as a kitchen worker as medium[8] and unskilled, as a short order cook as light and

---

[6]No mental health counseling treatment notes are contained in the record.

[7]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can perform light work, she also can perform sedentary work *See* 20 C.F.R.§ 404.1567(b) (2006).

[8] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can perform medium

semiskilled and as a production worker as medium and semiskilled. (R. at 269.) Hambrick also testified that Christian had no past work experience that could transfer to sedentary work.[9] (R. at 269.)

In rendering his decision, the ALJ reviewed medical records from Buchanan General Hospital; Dr. N. Eryilmaz, M.D.; Thompson Family Health Center; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Frank M. Johnson, M.D., a state agency physician; Julie Jennings, Ph.D., a state agency psychologist; Eugenie Hamilton, Ph.D., a state agency psychologist; Dr. Greg A. Schaublin, M.D., a neurologist; University of Virginia Health System; Dr. Sharat K. Narayanan, M.D.; and Brian E. Warren, Ph.D., a licenced clinical psychologist.

On February 22, 2002, Christian saw Dr. Jeffery Larsen, M.D., at Buchanan General Hospital for a colonoscopy due to complaints of pain in the tailbone area down to the rectum for the previous two months. (R.at 120-23, 204.) Dr. Larsen noted that there had been a question of Crohn's disease in Christian's medical past. (R. at 121.) He diagnosed her with Grade 4 hemorrhoids, an anterior fissure and proctitis. (R. at 123.) The examination was otherwise normal. (R. at 121-23.) Christian was discharged home in good condition. (R. at 122.)

On November 19, 2002, Christian saw M. Collins, a family nurse practitioner

_____

work, she also can perform sedentary and light work. *See* 20 C.F.R.§ 404.1567 (c) (2006).

[9]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. *See* 20 C.F.R. § 404.1567(a) (2006).

-5-

with Dr. Sharat K. Narayanan, M.D., at Thompson Family Health Center. (R. at 140-41.) Christian was diagnosed with gastroesophogeal reflux disease, ("GERD"), chronic constipation, depression and left cervical lymph node adenopathy. (R. at 141.) She was prescribed Zantac and Wellbutrin and was referred to Crystal Burke, a licensed clinical social worker, for depression. (R. at 141.)

On May 15, 2003, Christian saw M. Collins for a follow-up examination. (R. at 134-35.) She complained of no new problems. (R. at 134-35.) Christian was once again diagnosed with GERD, depression, chronic headaches and chronic constipation. (R. at 135.) Her medications remained unchanged, and she was advised to increase her walking to 30 minutes five times weekly as tolerated. (R. at 135.)

This is all of the medical records submitted that are dated prior to Christian's date last insured. However, the court will outline some of the medical evidence immediately following the date last insured in order to allow for a more complete picture of Christian's medical history.

On July 8, 2004, subsequent to her date last insured, Christian saw Dr. Narayanan for complaints of vomiting, diarrhea, dizziness and pain in her back and feet. (R. at 130.) She stated that her dizziness was improving. (R. at 130.) Christian was assessed as having a possible viral syndrome, chronic lower back pain, depression and GERD. (R. at 130.) She was prescribed Antivert for dizziness. (R. at 130.)

On October 11, 2004, an x-ray of the feet showed spur formations and osteoarthritis of the tarsometacarpal joints. (R. at 124, 201.) On October 13, 2004,

Christian complained of blurred vision, fleeting paresthesia of the extremities and dizziness. (R. at 125.)  She expressed a concern that she may have multiple sclerosis. (R. at 125.)   Dr. Narayanan noted that Christian was in no acute distress, her extremities showed no edema and she exhibited no focal neurological deficits.  (R. at 125.) Dr. Narayanan diagnosed depression by history, dizziness, a history of diplopia and a history of paresthesia. (R. at 125.) Christian was prescribed Antivert and Zoloft. (R. at 125-26.)   On November 2, 2004, an MRI of the brain revealed lesions suggestive of a demyelinating process like multiple sclerosis.  (R. at 197, 200.) Clinical and lab correlation was suggested. (R. at 199.)

On November 22, 2004, Dr. Richard M. Surrusco, M.D., a state agency physician, completed a Report of Contact, in which he concluded that Christian had no severe impairment during the time that she was insured for DIB purposes.  (R.at 148.) Specifically, Dr. Surrusco noted that there was no medical evidence from an acceptable  medical source pertinent to Christian's date last insured. (R. at 148.)  He stated that the May 13, 2003, examination was performed by a nurse practitioner and did not reveal any other abnormalities. (R. at 148.)  Dr. Surrusco found Christian's allegations incredible. (R. at 148.)  These findings were affirmed by Dr. Frank M. Johnson, M.D., another state agency physician, on February 14, 2005. (R. at 148.)

On November 29, 2004, Julie Jennings, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Christian suffered from a nonsevere affective disorder, namely depression, not otherwise

-7-

specified.[10]  (R. at 149-61.)  She found that Christian had no restrictions on her activities of daily living, experienced no difficulties in maintaining social functioning or in maintaining concentration, persistence or pace and had experienced no repeated episodes of decompensation. (R. at 159.)  Jennings opined that Christian's mental allegations were only partially credible.  (R. at 161.)

On December 15, 2004, Christian saw Dr. Greg Schaublin, M.D., a neurologist with the University of Virginia Health System, for an evaluation of possible multiple sclerosis.  (R. at 175-78, 191-94.)  Christian complained of a variety of symptoms, which she said began around June or July 2004.  (R. at 175, 191.)  Both the physical and neurological exams were unremarkable. (R. at 176-77, 192-93.)  Dr. Schaublin noted that Christian's brain MRI indicated a demyelinating process.  (R. at 177, 193.)  Dr. Schaublin further noted no indication of active disease.  (R. at 177, 193.)  Dr. Schaublin stated that Christian's neurological examination looked "quite healthy," with no definite objective localizing or lateralizing findings.  (R. at 177, 193.)  However, he further noted that the MRI looked "concerning for MS." (R. at 177, 193.)  Dr. Schaublin planned to work-up possible multiple sclerosis.  (R. at 177, 193.)  He advised a repeat MRI of the brain and of the cervical and thoracic spine.  (R. at 177, 193.)  Dr. Schaublin also recommended obtaining visual evoked potentials to look for signs of subclinical optic neuritis.  (R. at 177, 193.)  Dr. Schaublin further recommended testing for bacterial or viral infections that could masquerade as multiple sclerosis and for rheumatic and connective tissue diseases.  (R. at 177, 193.)  Dr. Schaublin also recommended a lumbar puncture to detect myelin basic protein and

_____

[10]Although this PRTF is dated November 29, 2004, it states that it is an assessment for the time period of June 1, 2003, through June 30, 2004, a time during which Christian was insured for DIB purposes.

oligoclonal bands. (R. at 177, 193.) Christian was prescribed Naproxen for her migraines and low back pain. (R. at 178, 194.) Dr. Schaublin noted that Christian would undergo this further work-up in January 2005. (R. at 178, 194.)

Christian submitted other medical records on appeal subsequent to her date last insured. These include records from Dr. Schaublin, Dr. Narayanan, Collins, Dr. Christopher J. Wright, M.D., with the University of Virginia Health System, and Brian E. Warren, Ph.D., a licensed clinical psychologist. However, given that these medical records range anywhere from six months to more than a year and a half following Christian's date last insured, and given that there is nothing contained in these medical records relating the findings contained therein to the relevant time period before the court, they will not be discussed in this Memorandum Opinion as they are irrelevant to this court's determination.

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

-9-

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated April 20, 2006, the ALJ denied Christian's claim. (R. at 12-15.) The ALJ found that Christian met the disability insured status requirements of the Act for DIB purposes through June 30, 2004. (R. at 15.) The ALJ also found that Christian had performed no substantial gainful activity since the alleged onset date. (R. at 15.) The ALJ found that the medical evidence established that at no time prior to July 1, 2004, did Christian suffer from any severe impairment. (R. at 15.) Therefore, the ALJ found that Christian was not disabled, as defined in the Act, at any time through June 30, 2004, and was not eligible for DIB benefits. (R. at 15.) *See* 20 C.F.R. § 404.1520(c) (2006).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by

-10-

substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Christian argues that the ALJ erred by failing to find that she suffered from a severe impairment. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 10-13.) Christian further argues that the ALJ improperly substituted his own unqualified medical opinion in making his decision for that of qualified medical professionals. (Plaintiff's Brief at 10-12.) Christian also argues that the ALJ failed to consider the combined effects of her impairments. (Plaintiff's Brief at 13.) Christian lastly argues that the ALJ erred by failing to pose a proper hypothetical to the vocational expert. (Plaintiff's Brief at 13-14.)

Christian argues that the ALJ erred by failing to provide adequate rationale for

-11-

his conclusion that Christian did not have a severe impairment. (Plaintiff's Brief at 10-13.) I agree. The ALJ is required to explicitly indicate the weight given to all relevant evidence of record. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). Here, the ALJ failed to do so. All the ALJ noted in his decision was that there were medical records from three separate dates prior to Christian's date last insured. The ALJ proceeded to state that all three of these dates predated Christian's alleged onset date of disability, thereby *impliedly* rejecting these medical records as irrelevant to Christian's DIB claim. I find that this was error for two reasons. First, I note that the ALJ did not meet his obligation to explicitly state the weight given to this medical evidence. Instead, he *implicitly* rejected it. Second, I find that the ALJ's implicit rejection on the grounds stated was improper. The ALJ has a duty to explicitly indicate the weight given to all relevant evidence. Despite the ALJ's implicit finding that this evidence was irrelevant to Christian's claim, I disagree. A claimant's alleged onset date of disability is useful in determining disability, but it is not determinative. A claimant simply must prove disability prior to the date last insured. A claimant is not required to prove disability prior to the date last insured, but *subsequent* to the alleged onset date of disability. Thus, I find that the ALJ erred by rejecting, out of hand, the medical records dated prior to Christian's alleged onset date of disability on that ground.

I further note that an MRI of Christian's brain performed on November 2, 2004, barely four months after her last insured date showed objective signs of lesions. (R. at 197-99.) Yet, no one has expressed an opinion about whether this condition could have existed prior to Christian's date last insured. This opinion is especially crucial in light of the fact that Christian states that her subjective complaints, which could be

associated with these brain lesions, began around the date she was last insured.

I further find that substantial evidence does not support the ALJ's additional explanation that these records, revealing diagnoses of hemorrhoids, anterior fissure, headaches and GERD, imposed no significant functional work-related limitations, thereby precluding a finding that they were severe. In particular, the ALJ included no discussion relating to this finding. Instead, he merely stated the conclusion in his decision that these impairments were not severe.

Next, I find that the ALJ erred by not considering Christian's impairments in combination in making his disability determination. It "is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity....[T]he [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989); *See* 20 C.F.R. § 404.1523 (2006). Additionally, "the ALJ must adequately explain his or her evaluation of the combined effect of impairments." *See Reichenbach v. Heckler,* 808 F.2d 309, 312 (4th Cir. 1985).

Based on my review of the record, I find that the ALJ did not adequately evaluate Christian's combined impairments, or even consider the effects of those combined impairments when making his decision. In his evaluation of the evidence, the ALJ stated that prior to July 1, 2004, the medical evidence showed that Christian suffered from hemorrhoids, anterior fissure, headaches and GERD. The ALJ determined that each of these medical conditions could not be considered a "severe"

-13-

impairment and would not significantly limit Christian's work-related activities. (R. at 13-15.) In his findings, the ALJ stated as follows: "At no time prior to July 1, 2004[,] did claimant have any impairment that significantly limited her ability to perform basic work-related activities. ..." (R. at 15.) The ALJ never addressed the combination of Christian's impairments anywhere in his decision.

Finally, Christian argues that the ALJ erred by failing to pose an adequate hypothetical to the vocational expert. (Plaintiff's Brief at 13-14.) The ALJ found that Christian was not disabled because she did not suffer from a severe impairment. (R. at 15.) Thus, the ALJ did not consider what, if any, impact Christian's impairments had on her work-related abilities. That being the case, and based on my findings above, there is no need to address this issue.

## IV. Conclusion

For the foregoing reasons, the Commissioner's motion for summary judgment will be denied, the Commissioner's decision denying benefits is vacated, and the case is remanded to the ALJ for further consideration consistent with this Memorandum Opinion.

An appropriate order will be entered.

DATED:      This 9th day of May  2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-15-